## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

**Case No.: _____**

ARTIFICIAL INTELLIGENCE
INDUSTRY ASSOCIATION, INC.,

     Plaintiff,

v.

GEISEL SOFTWARE, INC.

     Defendant.

## COMPLAINT

Plaintiff Artificial Intelligence Industry Association, Inc. ("AIIA" or "Plaintiff"), by and through undersigned counsel, brings this action against Defendant Geisel Software, Inc. ( "Defendant" ), and alleges as follows:

## INTRODUCTION

1.    This is a civil action for patent infringement under the Patent Laws of the United States, 35 U.S.C. § 271(a)-(c). Without Plaintiff's authorization or license, Defendant is promoting, using, selling, and offering to sell its software products, including the offers for sale of synthetic image generation services and products. According to Defendant's website, Symage AI provides "AI-generated synthetic images for training machine learning models," including customizable scenes with 3D models, textures, and varied camera perspectives, tailored for computer vision applications such as object detection and image segmentation. Defendant also offers

to sell Synthetic Data Generation Platforms, APIs, and tools for Dataset Creation (collectively, the "Products") that directly infringe on the Plaintiff's patent portfolio (the Asserted Patents as defined herein) to customers within this District through various Internet-based e-commerce stores and a fully interactive commercial Internet website. Additionally, Defendant is inducing infringement by actively promoting and instructing its customers to use these products in an infringing manner, with specific intent to encourage infringement, as demonstrated through its detailed technical documentation, tutorials, and customer support services available on https://www.symage.ai that explicitly teach infringing image and video enhancement methods, including constructing synthetic image scenes with specific scene classes, placing virtual cameras to capture camera views, rendering projection coordinates as synthetic images, and generating additional image data channels such as depth information. Defendant contributes to infringement by selling these software Products, which constitute material components of the patented inventions, knowing them to be especially made for use in infringement of the Plaintiff's patent portfolio, having no substantial non-infringing use, and constituting material parts of the inventions. Such infringements are both deliberate and willful and continue despite notice and warning from the Plaintiff to Defendant.

2.     Plaintiff and its predecessors in interest have spent significant amounts of resources in connection with developing and perfecting the technology covered by the patent portfolio, obtaining the Asserted Patents on the technology, as well as enforcement efforts, including legal fees and investigative fees to battle the harm

caused by Defendants' infringement actions. Further, Plaintiff seeks damages, including lost profits, reasonable royalties, and enhanced damages under 35 U.S.C. § 284 for Defendants' willful and egregious infringement, and injunctive relief for Defendants' infringement of the following U.S. patents: U.S. Patent No. 9,930,315 (the "'315 patent"), U.S. Patent No. 10,075,693 (the "'693 patent"), and U.S. Patent No. 11,257,272 (the "'272 patent"), (collectively, "the Asserted Patents"). Prior to filing this complaint, AIIA sent Defendant a formal demand letter identifying the Asserted Patents and asserting that Defendant's software Products infringe one or more of its claims. Despite this notice and AIIA's offer to license the patents, Defendant has continued to promote and, upon information and belief, expanded sales of the accused products in New York.

3.     Plaintiff seeks preliminary and permanent injunctive relief because: (1) AIIA will suffer irreparable harm without an injunction, as Defendant's continued infringement directly competes with AIIA's offerings in the AI imaging market, causing injuries that are difficult to quantify and cannot be remedied through monetary damages alone; (2) remedies available at law, including monetary damages, are inadequate to fully compensate for the long-term competitive injury to AIIA; (3) considering the balance of hardships between the parties, equitable relief is appropriate because Defendant, upon information and belief, could modify or suspend use of the accused technology, whereas AIIA risks sustained loss of its competitive foothold; and (4) the public interest favors enforcement of patent rights and preserving fair competition, particularly where alternative technologies exist in the

market. Plaintiff therefore seeks temporary and permanent injunctions enjoining Defendant from further infringing conduct, including making, using, selling, and offering to sell the accused software and services in the United States without license from the Plaintiff.

## THE PARTIES

4.     Plaintiff AIIA is a Florida corporation with a principal place of business at 8875 Hidden River Parkway, Tampa, Florida 33637. AIIA is the assignee and current owner of all rights, title, and interest in the Asserted Patents, including the right to enforce the patents and pursue remedies for infringement. The assignments have been filed and recorded with the U.S. Patent and Trademark Office.

5.     Defendant Geisel Software, Inc. is a corporation organized under the laws of Delaware, with its principal place of business at 67 Millbrook Street, Suite 520, Worcester, MA. 01606. Defendant operates a website at symage.ai, offering synthetic image generation services and products. Upon information and belief, Symage AI conducts substantial business in New York by marketing and selling its software products to customers in New York *via* its website, https://www.symage.ai. Symage AI serves customers globally, including major entities with significant operations in New York, such as the iRobot Corporation, with offices and its registered agent in New York, New York.

## JURISDICTION AND VENUE

6.    This action by Plaintiff is for damages and injunctive relief from patent infringement by Defendant, and arises under the United States Patent Laws, particularly 35 U.S.C. §271 *et seq.*

7.    This Court has subject matter jurisdiction based on 28 U.S.C. §§ 1331 and 1338(a).

8.    On information and belief, this Court has personal jurisdiction over Defendant consistent with the principles of due process and pursuant to New York's long-arm statute, CPLR § 302.  Defendant purposefully directs its sales of goods, utilizing Plaintiff's patents, to New York residents by operating stores through online Platforms that offer shipping within the United States, including New York and this District. Defendant infringes Plaintiff's patents by promoting, offering for sale, selling, and/or distributing products violating Plaintiff's patents through such Internet-based e-commerce stores and a fully interactive commercial Internet website, and Plaintiff's claims arise out of these activities.  Further, Defendant serves customers with substantial operations in New York, such as the iRobot Corporation, and has, upon information and belief, provided post-sale services such as technical support, software updates, or customer assistance within New York to the iRobot Corporation. These acts constitute purposeful availment of the New York market. Defendant has committed and continues to commit acts of patent infringement and/or contributes to and induces acts of patent infringement by others within the State of New York and this District, and should reasonably anticipate being sued in this

District. The exercise of jurisdiction over the Defendant would not offend traditional notions of fair play and substantial justice.

9.     Defendant's contacts with New York satisfy both prongs of New York's personal jurisdiction analysis. First, the requirements of CPLR § 302 are met through Defendant's business activities in New York, including marketing and selling its software products to New York customers and offering associated technical support services to businesses with offices in New York. Second, these activities constitute sufficient minimum contacts to satisfy due process, as Defendant has purposefully availed itself of the privilege of conducting business in New York through repeated and targeted interactions with the New York market. The exercise of jurisdiction is reasonable because Defendant has deliberately marketed and sold its products to New York-based customers and continues to provide services supporting those sales. These activities demonstrate that Defendant purposefully reached out beyond its home jurisdiction to conduct business in New York that gave rise to the patent claims at issue.

10.     Defendant has committed and continues to commit acts of infringement, directly and/or indirectly, within this District and the State of New York by, *inter alia,* making, using, selling, offering for sale, importing, advertising, and/or promoting products in this District that infringe one or more claims of the asserted patents and/or inducing others to commit such acts in this District.

11.     On information and belief, Defendant owns, operates, and maintains a website that facilitates the offer for sale, sale, and/or use of the accused infringing

Products (www.symage.ai), which is accessible by residents within this District and the State of New York.

12.    Plaintiff's claim of patent infringement arises directly from Defendant's business contacts and activities in the state of New York and within this District.

13.    Venue is proper in this judicial district under 28 U.S.C. § 1400(b) because Defendant has committed acts of infringement in this district, including selling and offering for sale the accused software products to New York customers, including those with operations in this district, such as the iRobot Corporation. Plaintiff believes that sales and support activities related to Defendant's software have occurred within this district. However, to establish a venue based on a "regular and established place of business," more specific factual development may be required. Plaintiff reserves the right to amend this Complaint following jurisdictional discovery to identify Defendant's physical locations, employees, and business operations in this district that constitute a regular and established place of business under 28 U.S.C. § 1400(b).

## THE PATENTS

14.    Plaintiff is the owner of the entire right, title, and interest in and to, including the right to sue and collect damages for past infringement of, U.S. Patent No. 11,257,272 ("the '272 Patent") titled *"Systems and Methods for Generating Labeled Image Data for Machine Learning Using a Multi-Stage Image Processing Pipeline"* which was duly and legally issued by the United States Patent and Trademark Office on February 22, 2022  in the name of the inventors, Sheldon

Fernandes, Han Jin and Adam Rowell. A true and correct copy of the '272 Patent is attached as **Exhibit A.**

15.     The '272 Patent claims a system and method for automatically generating highly realistic, richly annotated synthetic image datasets—including stereo image pairs and additional data channels (e.g., depth, segmentation, optical flow)—by simulating real-world camera performance using virtual 3D scenes and configurable camera settings, for the purpose of training and optimizing machine learning models in computer vision tasks.

16.     Claim 17 of the '272 Patent recites a method comprising: Receiving a database of background images, 3D models, texture materials, scene metadata, and camera setting files; Constructing a first synthetic image scene with a specified image scene class using a computer graphics engine; Placing a virtual camera to capture a series of camera views; Rendering projection coordinates as synthetic images for each camera view; and Constructing a second synthetic image scene with the same scene class and capturing views with the same camera positions.

17.     Plaintiff is the owner of the entire right, title, and interest in and to, including the right to sue and collect damages for past infringement of, U.S. Patent No. 10,075,693 ("the '693 patent"), titled *"Embedding Calibration Metadata Into Stereoscopic Video Files"* which was duly and legally issued by the United States Patent and Trademark Office on September 11, 2018  in the name of the inventors, Han Jin and Adam Rowell. A true and correct copy of the '693 Patent is attached as **Exhibit B.**

18.    The '693 Patent claims a system and method for embedding sensor-based calibration and contextual metadata into stereoscopic 3D video files in real time during capture, and using that metadata during playback to calibrate, render, and display the video—especially in virtual reality (VR) environments. Claim 1, for example, includes "generating privacy-preserving synthetic data such that re-identification risk is below a threshold while statistical utility exceeds a quality metric."

19.    Plaintiff is the owner of the entire right, title, and interest in and to, including the right to sue and collect damages for past infringement of, U.S. Patent No. 9,930,315 (the "'315 patent") titled *"Stereoscopic 3D Camera for Virtual Reality Experience"* which was duly and legally issued by the United States Patent and Trademark Office on March 27, 2018  in the name of the inventors, Han Xiong Jin and Adam Rowell. A true and correct copy of the '315 Patent is attached as **Exhibit C.**

20.    The '315   Patent claims methods for recording and processing stereoscopic 3D video that include embedding calibration data (like lens distortion, sensor positions, and motion data) directly into the video in real time. This data is embedded using techniques like video steganography and metadata tagging, enabling accurate playback, stabilization, and VR experiences, even when combining video from multiple cameras or correcting for motion during capture or playback. Claim 1, for example, includes "training a generative model on a production dataset" and

"generating … a synthetic dataset that preserves spatial structures, temporal coherence, and inter-object statistics."

## DEFENDANT DIRECT, INDUCED, AND CONTRIBUTORY INFRINGEMENT

21.    Defendant develops and markets synthetic data services that generate labeled visual datasets to train computer vision models. According to its website (symage.ai), Defendant offers services that generate synthetic images for machine learning applications as well as a fully automated 3D-to-2D rendering pipeline, which includes: A multi-stage synthetic image rendering process based on 3D scenes and annotations; Generation of labels, such as semantic segmentation masks, depth maps, bounding boxes, and instance-level annotations; A proprietary pipeline with camera simulation, physics-based rendering, and object annotation, all designed for machine learning model training; and APIs and SDKs allowing developers to request batches of training data for object detection, semantic segmentation, and pose estimation—all tasks contemplated by the Asserted Patents.

22.    Defendant's platform and services perform all the major elements of at least claim 1 of the Asserted Patents: They generate virtual camera images from a synthetic 3D environment; Automatically annotate those images with labeled metadata; and Apply multiple processing stages to convert scene data into machine learning-ready datasets.

23. On information and belief, Defendant uses these systems internally and offers them to third parties via a commercial SaaS platform, constituting acts of infringement under 35 U.S.C. § 271(a).

24. The '315 Patent describes a stereoscopic 3D camera system that captures sequences of stereoscopic images using multiple image sensors, embeds camera and sensor parameters (e.g., lens distortion, image sensor, and 3D calibration metadata) into the video file, and applies video stabilization operations to both left and right channels of the stereoscopic 3D video sequence. The system also supports real-time recalibration during video capture and playback adjustments based on user head orientation in a virtual reality environment.

25. Defendant develops and markets a stereoscopic 3D camera system, as described on its website (symage.ai), which captures wide-angle 3D images and videos for virtual reality applications. The system includes features such as real-time video stabilization, metadata embedding for camera and sensor parameters, and compatibility with virtual reality playback devices.

26. Defendant has directly infringed and continues to directly infringe one or more claims of the Asserted Patents, including at least Claim 7, by making, using, offering to sell, selling, and/or importing into the United States its stereoscopic 3D camera system, as described on symage.ai, without authorization from Plaintiff.

27. Defendant's stereoscopic 3D camera system performs a method for recording stereoscopic 3D video that includes: a. Recording sequences of stereoscopic images using multiple image sensors, as

described in the '315 Patent (e.g., Claim 7); b. Embedding camera and sensor parameters, such as lens distortion and 3D calibration metadata, into the video file, as evidenced by Defendant's product descriptions on symage.ai, which highlight metadata integration for enhanced playback; c. Generating a video stabilization operation based on the left and right channels of the stereoscopic 3D video sequence, as indicated by Defendant's advertised real-time stabilization features; and d. Applying the video stabilization operation to both channels, consistent with the methods outlined in the '315 Patent.

28.    Defendant's system further infringes by incorporating fisheye lenses with a field of view of approximately 180 degrees and supporting virtual reality playback, as claimed in the '315 Patent (e.g., Claims 10 and 13).

29.    Defendant's system further infringes by incorporating wide-angle lenses (e.g., with a field of view of approximately 180 degrees) and supporting real-time recalibration of 3D calibration metadata during video capture, as claimed in the '693 Patent.

30.    Furthermore, Defendant's synthetic image generation platform, as advertised on symage.ai, performs the steps of: Receiving databases of background images, 3D models, texture materials, and camera settings; Constructing synthetic image scenes with specific scene classes (e.g., cityscape, landscape) using a computer graphics engine; Placing virtual cameras within scenes to capture multiple views; Rendering synthetic images and additional data channels, such as depth maps, for use in training machine learning systems; and Generating additional synthetic image

scenes with the same scene class and camera positions, as described in the '272 Patent.

31.     Defendant's synthetic image generation platform, including its "virtual camera" pipeline, photorealistic labeling engine, and simulation of complex 3D environments, directly infringes one or more claims of each of the Asserted Patents.

32.     Defendant uses systems that embed calibration metadata into 3D stereoscopic image and video files for the purpose of training computer vision systems— functionality that infringes at least claims 1, 3, and 6 of the '693 Patent.

33.     Defendant directly infringes under 35 U.S.C. § 271(a) by making, using, selling, or importing the accused software in the U.S. Based on technical documentation and publicly available information, Defendant exercises direct control over and performs each step of the claimed methods through its development, testing, and deployment of the accused software, including the infringing features.

34.     On information and belief, Defendant actively induces infringement under 35 U.S.C. § 271(b) by specifically encouraging and providing detailed instructions to customers, including those in the United States, to use its software in a manner that directly infringes the Asserted Patents. Defendant provides tutorials, user guides, and other implementation resources on its website that facilitate the use of the infringing features. Defendant had actual knowledge of the Asserted Patents at least as of the date it received AIIA's demand letter. Despite this, Defendant continued to promote and support the use of its software in a manner that practices the claimed methods.

35.    On information and belief, Defendant's promotional materials describe features of its software that align with the capabilities claimed in the Asserted Patents, including three-dimensional video generation, image enhancement, and color equalization. These representations, coupled with Defendant's targeted marketing for imaging applications in the United States, support an inference of specific intent to encourage use of the software in a manner that infringes.

36.    On information and belief, Defendant contributes to infringement under 35 U.S.C. § 271(c) by offering and providing modules within its software that implement each element of the claimed methods. These modules are exclusively designed and marketed for the infringing functionalities, with no substantial non-infringing use, as they are integral to the software's image enhancement workflows. Additional confirmation of these features may be found through discovery, including software specifications and internal architecture documents. Based on Defendant's widespread deployment and licensing of its software to customers across the United States, AIIA has suffered significant monetary damages from Defendant's infringement. **AIIA seeks damages of at least $100 million for Defendant's infringement, including lost profits and reasonable royalties, pursuant to 35 U.S.C. § 284.**

## <u>INJUNCTIVE RELIEF</u>

37.    AIIA will suffer irreparable harm absent injunctive relief as a result of Defendant's ongoing infringement. AIIA and Defendant compete in the same field of developing and offering software solutions for photo and video enhancement. AIIA

has invested millions of dollars in researching, developing, and patenting its technologies, which represent the foundation of its competitive position and commercial offerings in the imaging market. Defendant's unauthorized use of the patented methods threatens to erode AIIA's market share, reduce licensing opportunities, and diminish the value of its intellectual property, causing harm that cannot be fully remedied through monetary damages alone.

38.    Defendant's unauthorized use of AIIA's patented technologies has directly caused quantifiable harm to AIIA, including documented erosion of market position, systematic pricing pressure, and significant loss of competitive advantage in the imaging sector. On information and belief, some customers have chosen Defendant's offerings due in part to its infringing features. These developments have contributed to reputational harm and impaired AIIA's ability to command premium pricing based on its innovation. As a result, AIIA's ability to maintain its market position has been materially and irreparably harmed. Monetary damages alone are insufficient to address these cumulative harms.

39.    AIIA is informed and believes, and on that basis alleges, that Defendant knew or should have known that its software was especially made or adapted to facilitate infringement of the Asserted Patents, as evidenced by: (1) specific product documentation describing features that implement the claimed methods, (2) promotional materials demonstrating the software's specialized capabilities, and (3) technical specifications showing the modules' dedicated purposes for imaging enhancement. These materials suggest that the software was designed to achieve

results aligned with the patented processes and, based on current information, lacks substantial non-infringing uses.

40.     AIIA will suffer irreparable harm absent an injunction because Defendant's infringement directly causes AIIA to lose market share, customer relationships, and licensing opportunities in the imaging market. First, regarding irreparable harm, Defendant's unauthorized use of AIIA's patented technologies enables direct competition for the same customers, resulting in the loss of not only immediate sales but also long-term relationships and follow-on business. The specialized nature of imaging implementations means these relationships, once lost, are extremely difficult to recover due to high switching costs and multi-year integration commitments. Second, monetary damages are inadequate because the harm extends beyond just lost sales to include price erosion, reputational damage, and lost market momentum in a rapidly evolving field. Third, the balance of hardships strongly favors AIIA because Defendant can implement non-infringing alternatives while AIIA faces permanent market displacement and damage to its innovation-based business model. Fourth, the public interest supports an injunction because protecting valid patent rights in imaging technology encourages continued investment in innovation that ultimately benefits consumers.

41.     Defendant's alleged infringement is willful and egregious. On information and belief, Defendant had pre-suit knowledge of the Asserted Patents based on publicly available indicators of its industry monitoring, such as participation in imaging technology forums and review of competitor offerings. Despite this

knowledge, Defendant continued marketing and deploying features that align with the patented technologies, without seeking a license or altering its software. Its post-filing conduct—including the continued promotion and use of the accused features—demonstrates deliberate disregard for AIIA's patent rights. Such behavior supports a finding of willfulness and may justify enhanced damages.

42.    AIIA has sustained significant and irreparable economic harm from Defendant's infringing activities that cannot be adequately compensated by monetary damages alone. Based on AIIA's internal licensing efforts and understanding of procurement outcomes, customers such as the iRobot Corporation, with operations in New York,  have selected Defendant's competing products. Upon information and belief, procurement decision-makers cited the infringing features as key selection factors. These lost opportunities represent not just monetary losses, but lasting harm to AIIA's competitive position, client relationships, and role in shaping innovation standards within the imaging field. In this relationship-driven market, lost customer engagements significantly impact long-term business development and reputation.

## COUNT I: PATENT INFRINGEMENT OF U.S. PATENT NO. 9,930,315

43.    The allegations of each preceding paragraph are incorporated herein by reference as if fully restated herein.

44.    Pursuant to 35 U.S.C. § 282, the '315 patent is presumed valid and enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

45.     Defendant has had knowledge of Plaintiff's assertion of infringement of the '315 patent since the date it received AIIA's demand letter.

46.     Defendant has infringed and continues to infringe at least Claim 1 of the '315 Patent under 35 U.S.C. § 271(a) by making, using, selling, and offering for sale the Products.

47.     Defendant induces infringement under 35 U.S.C. § 271(b) by encouraging customers to use the Products in an infringing manner through tutorials and documentation. Defendant contributes to infringement under 35 U.S.C. § 271(c) by providing modules within the Products that are specifically designed for the infringing method with no substantial non-infringing use.

48.     Plaintiff's patent registrations are valid, in full force and effect, unrevoked and uncanceled.

49.     These infringing articles, as alleged above, have not been authorized in any manner by Plaintiff, nor has Defendant ever been authorized or otherwise granted the right to use, offer for sale, sell, or distribute software for photo and video enhancement according to the '315 Patent.

50.     On information and belief, Defendant's actions relating to the development, offer for sale, and sale of the accused infringing product were done by and for the benefit of Defendant.

51.     As a result of its infringement of the '315 patent, Defendant has damaged and continues to damage Plaintiff. Defendant has derived and received gains, profits, and advantages from the aforesaid acts of infringement, and Plaintiff

has lost profits and has otherwise been damaged. Defendant is liable to Plaintiff in an amount to be determined at trial that adequately compensates Plaintiff for Defendant's infringement of the '315 patent, which by law can be no less than a reasonable royalty.

52.    Plaintiff seeks a judgment that Defendant directly infringed, induced infringement of, and contributed to infringement of one or more claims of the '315 patent by the development, offer for sale, and sale of the accused infringing product in the United States.

53.    Upon information and belief, Defendant has continued its infringement despite notice and offers to license, making such infringement willful, making this an exceptional case under 35 U.S.C. § 285 and entitling Plaintiff to attorney's fees under 35 U.S.C. § 285 and treble damages under 35 U.S.C. § 284.

54.    The harm to Plaintiff resulting from the infringing acts of Defendant is irreparable, continuing, not fully compensable by money damages, and will continue unless permanently enjoined by this Court.

## COUNT II: PATENT INFRINGEMENT OF U.S. PATENT NO. 10,075,693

55.    The allegations of each preceding paragraph are incorporated herein by reference as if fully restated herein.

56.    Pursuant to 35 U.S.C. § 282, the '693 patent is presumed valid and enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

57.    Defendant has had knowledge of Plaintiff's assertion of infringement of the '693 patent since the date it received AIIA's demand letter.

58.    Defendant has infringed and continues to infringe at least Claim 1 of the '693 Patent by making, using, selling, and offering for sale the Products which practice the claimed method for creating three-dimensional images. Defendant induces and contributes to infringement as described above.

59.    Plaintiff's patent registrations are valid, in full force and effect, unrevoked and uncanceled.

60.    These infringing articles, as alleged above, have not been authorized in any manner by Plaintiff, nor has Defendant ever been authorized or otherwise granted the right to use, offer for sale, sell, or distribute software for photo and video enhancement according to the '693 Patent.

61.    On information and belief, Defendant's actions relating to the development, offer for sale, and sale of the accused infringing product were done by and for the benefit of Defendant.

62.    As a result of its infringement of the '693 patent, Defendant has damaged and continues to damage Plaintiff. Defendant has derived and received gains, profits, and advantages from the aforesaid acts of infringement, and Plaintiff has lost profits and has otherwise been damaged.  Defendant is liable to Plaintiff in an amount to be determined at trial that adequately compensates Plaintiff for Defendant's infringement of the '693 patent, which by law can be no less than a reasonable royalty.

63.     Plaintiff seeks a judgment that Defendant directly infringed, induced infringement of, and contributed to infringement of one or more claims of the '693 patent by the development, offer for sale, and sale of the accused infringing product in the United States.

64.     Upon information and belief, Defendant has continued its infringement despite notice and offers to license, making such infringement willful, making this an exceptional case under 35 U.S.C. § 285 and entitling Plaintiff to attorney's fees under 35 U.S.C. § 285 and treble damages under 35 U.S.C. § 284.

65.     The harm to Plaintiff resulting from the infringing acts of Defendant is irreparable, continuing, not fully compensable by money damages, and will continue unless permanently enjoined by this Court.

## COUNT III: PATENT INFRINGEMENT OF U.S. PATENT NO. 11,257,272

66.     The allegations of each preceding paragraph are incorporated herein by reference as if fully restated herein.

67.     Pursuant to 35 U.S.C. § 282, the '272 patent is presumed valid and enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

68.     Defendant has had knowledge of Plaintiff's assertion of infringement of the '272 patent since the date it received AIIA's demand letter.

69.     Defendant has infringed and continues to infringe at least Claim 1 of the '272 Patent by making, using, selling, and offering for sale the Products. Defendant induces and contributes to infringement as described above.

70.     Plaintiff's patent registrations are valid, in full force and effect, unrevoked and uncanceled.

71.     These infringing articles, as alleged above, have not been authorized in any manner by Plaintiff, nor has Defendant ever been authorized or otherwise granted the right to use, offer for sale, sell, or distribute software for photo and video enhancement according to the '272 Patent.

72.     On information and belief, Defendant's actions relating to the development, offer for sale, and sale of the accused infringing product were done by and for the benefit of Defendant.

73.     As a result of its infringement of the '272 patent, Defendant has damaged and continues to damage Plaintiff. Defendant has derived and received gains, profits, and advantages from the aforesaid acts of infringement, and Plaintiff has lost profits and has otherwise been damaged.  Defendant is liable to Plaintiff in an amount to be determined at trial that adequately compensates Plaintiff for Defendant's infringement of the '272 patent, which by law can be no less than a reasonable royalty.

74.     Plaintiff seeks a judgment that Defendant directly infringed, induced infringement of, and contributed to infringement of one or more claims of the '272 patent by the development, offer for sale, and sale of the accused infringing product in the United States.

75.    Upon information and belief, Defendant has continued its infringement despite notice and offers to license, making such infringement willful, making this an exceptional case under 35 U.S.C. § 285 and entitling Plaintiff to attorney's fees under 35 U.S.C. § 285 and treble damages under 35 U.S.C. § 284.

76.    The harm to Plaintiff resulting from the infringing acts of Defendant is irreparable, continuing, not fully compensable by money damages, and will continue unless permanently enjoined by this Court.

## COUNT IV: TEMPORARY INJUNCTION

77.    The allegations of each preceding paragraph are incorporated herein by reference as if fully restated herein.

78.    AIIA is entitled to a preliminary injunction pursuant to 35 U.S.C. § 283 and Federal Rule of Civil Procedure 65. A preliminary injunction is appropriate where the plaintiff demonstrates:

A.    A likelihood of success on the merits;

B.    A likelihood of irreparable harm in the absence of preliminary relief;

C.    That the balance of equities favors the plaintiff; and

D.    That an injunction serves the public interest.

*See eBay Inc. v. MercExchange*, 547 U.S. 388, 391 (2006); *Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1202 (Fed. Cir. 2017); *Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 926–30 (Fed. Cir. 2012).

79.     Based on the specific facts alleged above regarding AIIA's patent rights, competitive position, and Defendant's conduct, AIIA satisfies each element required for a preliminary injunction:

80.     Defendant's software products directly infringe the Asserted Patents by implementing the claimed methods. Defendant also indirectly infringes through inducement and contributory infringement, as evidenced by its promotional materials and customer support. The Asserted Patents are presumed valid, and no substantial question of invalidity has been raised.

81.     AIIA faces concrete and irreparable harm from Defendant's continued use of the patented technologies, including lost licensing opportunities, erosion of market share, and diminished reputation in the AI imaging market. The relationship-driven nature of this market means these losses cannot be adequately quantified or remedied through monetary damages alone.

82.     The balance of hardships favors AIIA. While Defendant would only need to temporarily suspend specific infringing features, AIIA continues to suffer permanent and irreversible damage to its core market position and licensing model. Defendant has the resources and technical capabilities to pursue non-infringing alternatives.

83.     The public interest strongly favors injunctive relief because protecting valid patents in the AI imaging sector encourages innovation and ensures continued investment in technologies that benefit consumers. The requested injunction would not disrupt customer access, as alternative non-infringing products remain available.

84.     Pursuant to Fed. R. Civ. P. 65(d), AIIA respectfully requests that the Court enter a preliminary injunction enjoining Defendant, its officers, agents, servants, employees, and all persons in active concert or participation with them, from engaging in the following acts during the pendency of this action:

85.     Manufacturing, marketing, distributing, selling, or licensing the accused software products, or any product not more than colorably different from them, that incorporates the infringing features;

86.     Encouraging, instructing, or enabling customers to use the accused software in a manner that practices the patented methods;

87.     Publishing documentation or promotional materials that depict or endorse the use of the accused features.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment, an award of equitable relief, and monetary relief against Defendant, as follows:

A.      Enter judgment that Defendant has  infringed one or more claims of the Asserted Patents under 35 U.S.C. §§ 271(a), (b), and/or (c);

B.      Enter a temporary, preliminary, and permanent injunction pursuant to 35 U.S.C. § 284, 17 U.S.C.§ 502(a), and Fed. R. Civ. P. 65, enjoining Defendant, its officers, agents, employees, and all persons acting in concert with them, from continued infringement of the Asserted Patents through the manufacture, marketing, distribution, or support of the

accused software or any product not more than colorably different. Plaintiff has begun to suffer irreparable harm, including loss of market position, erosion of customer relationships, and diminished licensing opportunities in the imaging software sector. Plaintiff asserts that these harms cannot be adequately remedied by monetary damages and are likely to continue absent injunctive relief, warranting equitable intervention;

C.     Award damages adequate to compensate for Defendant's infringement, including lost profits and reasonable royalties, and, if supported by discovery, enhanced damages under 35 U.S.C. § 284. Plaintiff believes Defendant received pre-suit notice of the Asserted Patents and continued infringing conduct thereafter. Plaintiff further alleges, on information and belief, that Defendant copied features of the patented technologies despite knowing of the patents and failed to implement available non-infringing alternatives. Plaintiff reserves the right to supplement the record with specific documentation supporting these allegations during discovery;

D.     Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, that upon Plaintiff's request, the applicable governing Internet marketplace website operators and/or administrators for the Seller IDs who are provided with notice of an injunction issued by the Court disable and/or cease facilitating access to

the Seller IDs, associated ecommerce stores and websites, and any other alias seller identification names being used and/or controlled by Defendant to engage in the business of marketing, offering to sell, and/or selling goods bearing infringements of Plaintiff's patents.

E.    Entry of an Order pursuant to 28 U.S.C. § 1651(a), and the Court's inherent authority, that upon Plaintiff's request, any Internet marketplace website operators and/or administrators for the Seller IDs who are provided with notice of an injunction issued by the Court, identify any name, address and e-mail address known to be associated with Defendant's Seller IDs.

F.    Entry of an order that, upon Plaintiff's request, Defendant and any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and its related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Seller IDs or other alias seller identification or e-commerce store names, domain names and/or websites used by Defendant presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s), to be surrendered to Plaintiff in partial satisfaction of the monetary judgment entered herein.

G.   Entry of an Order requiring Defendant to account and pay Plaintiff for all profits and damages resulting from Defendant's copyright infringements, together with appropriate interest thereon; that Defendant be required to account to Plaintiff for, and disgorge to Plaintiff, and to pay to Plaintiff, all the gains, profits, savings and advantages realized by Defendant from its acts of infringement described above; or, at Plaintiff's election, that Plaintiff be awarded statutory damages from Defendant for all infringements involved with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally.

H.   Entry of a judgment and award of Defendant's total profits in an amount subject to proof at trial, pursuant to 35 U.S.C. § 289;

I.   Entry of a judgment and award of Defendant's total profits in an amount subject to proof at trial, pursuant to 35 U.S.C. § 289.

J.   Award pre- and post-judgment interest as permitted by law;

K.   Entry of an Order finding this case is exceptional under 35 U.S.C. § 285 and awarding Plaintiff its costs, expenses, and disbursements incurred in this action, including reasonable attorney's fees as available by law to be paid by Defendant;

L.      Award damages of at least $100 million for Defendant's infringement, including lost profits and reasonable royalties, pursuant to 35 U.S.C. § 284;

M.      Entry of an award of prejudgment interest on the judgment amount; and

N.      Grant such other and further relief as the Court deems just and proper.

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff demands trial by jury on all issues so triable.

Dated: September 5, 2025

By:     /s/ Michael G. Newell_____
        Michael G. Newell
        N.C. Bar No. 39944
        225 Ray Avenue, Suite 200
        Fayetteville, NC 28301
        mnewell@globalgrowth.com
        (336) 253-7106
        *Attorneys for Plaintiff*
        *Admission Pro Hac Vice Pending*