**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Artificial Intelligence Industry Association, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Geisel Software, Inc., <br><br> Defendant. | **Civil Action No. 1:25-cv-07387-PKC** |

**DEFENDANT GEISEL SOFTWARE, INC.'S
BRIEF IN SUPPORT OF ITS MOTION TO DISMISS
<u>PURSUANT TO FED. R. CIV. P. 12(b)(1), 12(b)(2), 12(b)(3) and 12(b)(6)</u>**

Dated: February 13, 2026

John H. Choi
John H. Choi & Associates LLC
65 Challenger Road, Suite 100
Ridgefield Park, NJ 07660
Tel. (201) 580-6600
Fax. (201) 625-1108
jchoi@jchoilaw.com

*Attorneys for Defendant Geisel Software, Inc.*

**TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ................................................................................ 1

II.     BACKGROUND AND FACTS ............................................................................... 2

      A.      Plaintiff Artificial Intelligence Industry Association, Inc. ...................................... 2

      B.      Defendant Geisel Software, Inc. ............................................................................ 3

      C.      Plaintiff's Amended Complaint .............................................................................. 3

      D.      The Asserted Patent ............................................................................................... 4

III.    LEGAL STANDARDS .......................................................................................... 5

      A.      Fed. R. Civ. P. 12(b)(1) – Lack of Subject Matter Jurisdiction (Standing to Sue) ........................................................................................................................ 5

      B.      Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1400(b) – Improper Venue .................... 6

      C.      Fed. R. Civ. P. 12(b)(2) – Lack of Personal Jurisdiction ....................................... 7

      D.      Fed. R. Civ. P. 12(b)(6) – Failure to State a Claim ................................................ 8

IV.     ARGUMENT ....................................................................................................... 8

      A.      Plaintiff Lacks Standing to Sue ............................................................................. 8

      B.      This Court is Not the Proper Venue ....................................................................... 9

      C.      This Court Lacks Personal Jurisdiction ............................................................... 11

      D.      The Amended Complaint Fails to State a Claim ................................................... 14

      E.      The Amended Complaint Should be Dismissed with Prejudice without Leave to Replead ............................................................................................................ 19

V.      CONCLUSION .................................................................................................. 20

---

## TABLE OF AUTHORITIES

**Cases**

*Abraxis Bioscience Inc. v. Navinta LLC*, 625 F.3d 1359 (Fed. Cir. 2010)........................................ 6

*Alps South, LLC v. Ohio Willow Wood Co.*, 787 F.3d 1379 (Fed. Cir. 2015)................................... 6

*Art Assure Ltd., LLC v. Artmentum GmbH*, No. 14 Civ. 3756 (LGS), 2014 U.S. Dist. LEXIS 156521, 2014 WL 5757545 (S.D.N.Y. Nov. 4, 2014) ........................................................ 14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)........................................................................................... 8

*Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 563 U.S. 776, 131 S. Ct. 2188, 180 L. Ed. 2d 1 (2011)........................................................................................ 8

*Beech Aircraft Corp. v. Edo Corp.*, 990 F.2d 1237 (Fed. Cir. 1993)................................................ 8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................................... 8

*BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373 (Fed. Cir. 2007) .................................. 15

*Bobcar Media, LLC v. Aardvark Event Logistics, Inc.*, 354 F. Supp. 3d 375 (S.D.N.Y. 2018) ......... 8

*Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342 (Fed. Cir. 2021) ............................................... 8, 15

*Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573 (Fed. Cir. 1993) .................................................. 6

*Chiste v. Hotels.com L.P.,* 756 F.Supp. 2d 382 (S.D.N.Y. 2010)................................................... 19

*Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090 (Fed. Cir. 1998).......................................... 6

*Gaia Techs., Inc. v. Reconversion Techs. Inc.*, 93 F.3d 774 (Fed. Cir. 1996)................................... 6

*Golden v. Qualcomm Inc.,* 2023 WL 6561044, 2023 U.S. App. LEXIS 26806 (Fed. Cir. Oct. 10, 2023) ........................................................................................................................ 15

*Goureau v. Lemonis*, 2021 WL 4847073, 2021 U.S. Dist. LEXIS 199321 (S.D.N.Y. Oct. 15, 2021) ........................................................................................................................ 19

*Gucci Am., Inc. v. Bank of China*, 768 F.3d 122 (2d Cir. 2014)....................................................... 7

*Haddad v. United States*, 136 Fed. Cl. 572, 2018 U.S. Claims LEXIS 143 (Fed. Cl. Feb. 28, 2018) ........................................................................................................................ 6

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55 (2d Cir. 1985) ........................................... 12

*In re Cray Inc.*, 871 F.3d 1355 (Fed. Cir. 2017) ...................................................................... 9, 10

*In re Google LLC*, 949 F.3d 1338 (Fed. Cir. 2020) ........................................................... 10

*In re ZTE (USA) Inc.*, 890 F.3d 1008 (Fed. Cir. 2018) ...................................................... 7

*Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181 (2d Cir. 1998) ........................................ 14

*John Hancock Prop. & Cas. Ins. Co. v. Universale Reinsurance Co.*, No. 91 Civ. 3644 (CES),
       1992 U.S. Dist. LEXIS 1113, 1992 WL 26765 (S.D.N.Y. Feb. 5, 1992) ............................. 8

*Licci v. Lebanese Canadian Bank*, 732 F.3d 161 (2d Cir. 2013) ....................................... 12

*Lyda v. Fremantle Media N. Am., Inc.*, 10-cv-4773-DAB, 2012 WL 957498, 2012 U.S. Dist.
       LEXIS 39316 (S.D.N.Y. Mar. 8, 2012) ..................................................................... 15, 19

*Manrique v. State Farm Mut. Auto. Ins. Co.*, 2021 WL 5745717, 2021 U.S. Dist. LEXIS
       232066 (S.D.N.Y. Dec. 2, 2021) ............................................................................ 19

*New World Int'l, Inc. v. Ford Glob. Techs., LLC*, 859 F.3d 1032 (Fed. Cir. 2017) ........................... 7

*Oneida Indian Nation of New York v. City of Sherrill*, 337 F.3d 139 (2d Cir. 2003) ................... 19

*Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304 (Fed. Cir. 2003) .................................... 5

*Picture Patents, LLC v. Aeropostale, Inc.*, 788 F. Supp. 2d 127 (S.D.N.Y. 2011) ........................... 6

*Pieczenik v. Dyax Corp.*, 265 F.3d 1329 (Fed. Cir. 2001) ................................................................. 7

*Poof-Slinky, LLC v. A.S. Plastic Toys Co.*, No. 19 Civ. 9399 (ER), 2020 U.S. Dist. LEXIS
       162529, 2020 WL 5350537 (S.D.N.Y. Sept. 4, 2020) ...................................................... 12

*Schwendimann v. Arkwright Advanced Coating, Inc.*, 959 F.3d 1065 (Fed. Cir. 2020) ..................... 6

*Seldon v. Direct Response Techs. Inc.*, No. 03-cv-5381, 2004 U.S. Dist. LEXIS 5344, 2004 WL
       691222 (S.D.N.Y. March 31, 2004) ........................................................................ 14

*Shenzhen OKT Lighting Co. v. JLC-Tech LLC*, 2021 2021 WL 4443637, U.S. Dist. LEXIS
       185703 (S.D.N.Y. Sept. 28, 2021) ........................................................................ 8, 11

*Solé Resort, S.A. de C.V. v. Allure Resorts Management, LLC*, 450 F.3d 100 (2d Cir. 2006) ......... 12

*Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221 (2d Cir. 2014) ............................... 7

*Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245 (Fed. Cir. 2000) ........................................................ 6

*TC Heartland v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 137 S. Ct. 1514 (2017) ............... 9

*Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792 (S.D.N.Y. 2015) .................................................. 7

*UI Techs., Inc. v. Ricoma Int'l Corp.,* 2:22-cv-00220, 2022 WL 1693633, 2022 U.S. Dist. LEXIS  94849 (E.D.N.Y. May. 26, 2022) ........................................................................... 11

*Vapor Point LLC v. Moorhead*, 832 F.3d 1343 (Fed. Cir. 2016) ...................................................... 9

*View Eng'g, Inc. v. Robotic Vision Sys.*, 208 F.3d 981 (Fed. Cir. 2000) ......................................... 19

*Wills v. Resorts World Las Vegas, LLC*, 2025 U.S. Dist. LEXIS 115617, 2025 WL 1696969 (E.D.N.Y. June 16, 2025) ................................................................................................. 14

*Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346 (Fed. Cir. 2017) .......................... 7

## Rules and Statutes

28 U.S.C. § 1400(b). ...................................................................................................... 6, 7, 9, 10

35 U.S.C. § 261 ...................................................................................................................... 9

C.P.L.R. § 301 ...................................................................................................................... 11

C.P.L.R. § 302 ................................................................................................................. 11, 12

Fed. R. Civ. P. 12(b)(1) .......................................................................................................... 5

Fed. R. Civ. P. 12(b)(2) ....................................................................................................... 7, 13

Fed. R. Civ. P. 12(b)(3) .......................................................................................................... 6

Fed. R. Civ. P. 12(b)(6) .......................................................................................................... 8

Fed. R. Civ. P. 15(a) ............................................................................................................. 19

I.     **PRELIMINARY STATEMENT**

This action arises out of non-practicing entity Plaintiff Artificial Intelligence Industry Association, Inc. ("AIIA" or "Plaintiff") enforcement of a patent that it recently acquired.  In an effort to monetize on several patents relating to artificial intelligence, AIIA is engaging in an enforcement campaign against anyone who remotely appears to be practicing the claims of its patents.  Defendant Geisel Software, Inc. ("GSI") is one of at least ten defendants caught up in AIIA's enforcement efforts.

Despite having an opportunity to cure the deficiencies in its original complaint, AIIA made very little substantive change in its Amended Complaint.  As a result, the Amended Complaint still falls short of surviving a motion to dismiss. GSI moves to dismiss AIIA's Amended Complaint with prejudice.

First, AIIA lacks standing to sue on the single patent asserted in the Amended Complaint. The assignment from the inventors to the applicant of the asserted patent is unsigned and therefore, all four assignments in the asserted patent, including the most recent assignment to AIIA, are invalid. As a result, AIIA does not have rights to the asserted patent.

Second, this Court is not the proper venue.  GSI has no presence in this District.  GSI is incorporated in Delaware and its only office is in Massachusetts. Indeed, AIIA acknowledges this and alleges in the Amended Complaint that "to establish a venue based on a 'regular and established place of business,' more specific factual development may be required." However, discovery will not resolve the issue.

Third, this Court lacks personal jurisdiction on GSI.  In the Amended Complaint, AIIA only makes conclusory allegations that GSI: (i) "directs its sales of software services to New York residents through its commercial website and marketing activities;" (ii) "serves customers with substantial

business operations in New York, such as iRobot Corporation;" and (iii) promotes and offers infringing products through its website, which is accessible by residents here. However, none of the allegations are sufficient to overcome the present motion to dismiss because GSI does not conduct business in New York, let alone in this District, and has no presence here.

Fourth, AIIA's patent infringement claim does not come close to meeting the required pleading standards. Indeed, AIIA's infringement allegations are solely based on information taken from GSI's purported website, and there is no discussion in the Amended Complaint about more than half of the thirteen elements of the asserted claim.

Lastly, AIIA should not have a third bite at the apple because even if it is given another opportunity, it cannot cure the deficiencies in its Amended Complaint. For example, as AIIA has been aware, in order to overcome the standing issue, a proper assignment document must be executed and a new case must be filed. However, AIIA chose to file the Amended Complaint with the same deficiency instead.

For these reasons, set forth in more detail below, GSI respectfully moves to dismiss the Amended Complaint with prejudice.

## II.    BACKGROUND AND FACTS

### A.  Plaintiff Artificial Intelligence Industry Association, Inc.

Plaintiff Artificial Intelligence Industry Association, Inc. ("AIIA") is a non-practicing entity located in Tampa, Florida. (ECF No. 23 – Amended Complaint ¶ 4). AIIA markets itself as being "a member-based organization dedicated to delivering powerful patent protection services to the world's most pioneering technology companies" and boasts that its patent portfolio "consists of 38 global patent assets covering all aspects of synthetic imaging for AI training and image stitching algorithms." (Declaration of John H. Choi ("Choi Decl.") Exh. 1).

AIIA recently acquired several U.S. utility patents for purposes of enforcement.  On or about July 18, 2025, AIIA wrote to GSI accusing GSI of infringing five patents that AIIA had recently acquired – U.S. Pat. Nos. 9,930,315; 9,948,919; 10,075,693; 10,979,693; and 11,257,272. (Choi Decl. Exh. 2).  In the letter, without any explanation of what products are infringing or how any products infringe, AIIA threatened to file a $100 million lawsuit.  This case is one of at least ten patent infringement cases recently filed by AIIA against different defendants. (Choi Decl. Exh. 5).

**B.  Defendant Geisel Software, Inc.**

Defendant Geisel Software, Inc. ("GSI") is a company organized under the laws of Delaware. (Declaration of Brian Geisel ("Geisel Decl.") Exh. 1, ¶ 9; Amended Complaint ¶ 5).  Its only office is in Worcester, Massachusetts. (Geisel Decl. ¶ 3). GSI develops software for businesses and in particular, software related to robotics and automation, artificial intelligence (AI) and machine learning (ML), and Internet of Things (IoT). GSI advertises its products and services on its website *www.geisel.software*. (Geisel Decl. ¶ 5).

GSI is a small company with relatively few customers.  As far as GSI is aware, none of its customers are in the State of New York. (Geisel Decl. ¶ 7).

Recently, GSI was hired by a separate company, Symage, Inc. ("Symage") to develop software for generating reliable, high-quality image data to train AI models for Symage's AI developer clients. (Geisel Decl. ¶ 8).  The state-of-the-art custom synthetic image generators developed by GSI are then marketed by Symage under its own name. (*Id.*) The data generated by Symage provides a cost-effective means for AI developers to develop accurate and reliable models. (*Id.*) Symage advertises its products and services on its website *www.symage.ai*. (*Id.*)

**C.  Plaintiff's Amended Complaint**

On September 5, 2025, AIIA filed its $100 million lawsuit against GSI.  AIIA's original Complaint asserted three patents, including U.S. Pat. No. 11,257,272. (ECF No. 1).  On December 1,

2025, GSI filed a pre-motion letter requesting the Court for leave to file a motion to dismiss based on: (i) improper venue; (ii) lack of personal jurisdiction; (iii) failure to state a claim; and (iv) lack of standing with respect to the '272 Patent. (ECF No. 18).  In its belated response, AIIA requested and was granted leave to file an amended complaint. (ECF Nos. 21, 22).

On December 24, 2025, AIIA filed its Amended Complaint (ECF No. 23). The Amended Complaint, which includes only a few substantive changes, only asserts U.S. Pat. No. 11,257,272 ("the '272 Patent" or "the Asserted Patent").  In response, GSI filed a pre-motion letter advising the Court that the Amended Complaint is deficient for the same reasons that the original Complaint was deficient, i.e., (i) lack of standing with respect to the Asserted Patent; (ii) improper venue; (iii) lack of personal jurisdiction; and (iv) failure to state a claim.[1] (ECF No. 24).

In response, AIIA stated that it would oppose GSI's motion to dismiss and the parties agreed to a briefing schedule, which the Court so ordered.  (ECF Nos. 25, 26).

**D.  The Asserted Patent**

The Asserted Patent, titled "Generating Synthetic Image Data for Machine Learning," was filed on April 25, 2019 and issued on February 22, 2022. (ECF No. 23-1; Choi Decl. Exh. 6).  The Asserted Patent includes 18 claims, of which claims 1, 13 and 17 are independent, i.e., claims with the broadest scope.  Claim 1 is directed to "[a] method for generating a synthetic image data by capturing camera view of synthetic image scene;" claim 13 is directed to "[a] method of generating a pair of synthetic stereo images;" and claim 17 is directed to "[a] method for generating synthetic image data." (Choi Decl. Exh. 6 at 37-39).

---

[1] GSI's pre-motion letter also identified invalidity of the asserted patent as a basis for dismissal. (ECF No. 24 at 6-10).  GSI has elected not raise the issue at this time, however, reserves the right to raise the issue in the future.

The Asserted Patent names Adam Rowell, Sheldon Fernandes and Han Jin ("Inventors") as inventors and Lucid VR, Inc. as the applicant. (Choi Decl. Exh. 6 at 1). There are several purported assignments for the Asserted Patent that were recorded with the U.S. Patent and Trademark Office ("PTO"):

> (i)      Inventors to Lucid VR, Inc., dated April 25, 2019 (recorded on April 26, 2019) ("First Assignment");
>
> (ii)      Lucid VR, Inc. to Bluewhale AI, Inc., dated December 19, 2022 (recorded on March 14, 2025);
>
> (iii)      Bluewhale AI, Inc. to R. Hewen & Co., LLC, dated May 8, 2025 (recorded on July 16, 2025); and
>
> (iv)      R. Hewen & Co., LLC to Artificial Intelligence Industry Association, Inc., dated May 12, 2025 (recorded on July 16, 2025).

(Choi Decl. Exh. 3).

The First Assignment, i.e., the assignment of rights from the Inventors to the applicant Lucid VR, Inc., which was recorded with the PTO under Reel No. 049011/Frame No. 0607, is unsigned. (Choi Decl. Exh. 4).

## III.     LEGAL STANDARDS

### A.     Fed. R. Civ. P. 12(b)(1) – Lack of Subject Matter Jurisdiction (Standing to Sue)

"[T]o assert standing for patent infringement, the plaintiff must demonstrate that it held enforceable title to the patent *at the inception of the lawsuit.*" *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309 (Fed. Cir. 2003) (emphasis in the original). It is well established that "[p]atent ownership cannot be assigned without a 'written instrument documenting the transfer of

proprietary rights in the patents.'" *Picture Patents, LLC v. Aeropostale, Inc.*, 788 F. Supp. 2d 127, 137 (S.D.N.Y. 2011) (quoting *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1250 (Fed. Cir. 2000)).

Moreover, plaintiffs who lacked a written assignment at the time filing cannot rely on post-suit assignments to fix a lack of standing at the time of filing. *Schwendimann v. Arkwright Advanced Coating, Inc.*, 959 F.3d 1065, 1078 (Fed. Cir. 2020) (citing *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998) ("[N]unc pro tunc assignments are not sufficient to confer retroactive standing.")); *see also Alps South, LLC v. Ohio Willow Wood Co.*, 787 F.3d 1379, 1384-86 (Fed. Cir. 2015); *Abraxis Bioscience Inc. v. Navinta LLC*, 625 F.3d 1359, 1367 (Fed. Cir. 2010); *Gaia Techs., Inc. v. Reconversion Techs. Inc.*, 93 F.3d 774, 779-80 (Fed. Cir. 1996).

In the context of standing to sue for patent infringement, if a motion to dismiss for lack of subject matter jurisdiction "denies or controverts the pleader's allegations of jurisdiction, . . . the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction." *Haddad v. United States*, 136 Fed. Cl. 572, 578, 2018 U.S. Claims LEXIS 143 (Fed. Cl. Feb. 28, 2018) (quoting *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993)). "In such a case, the allegations in the complaint are not controlling and only uncontroverted factual allegations are accepted as true for purposes of the motion. All other facts underlying the controverted jurisdictional allegations are in dispute and are subject to fact-finding by the . . . court." *Id.*

### B. Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1400(b) – Improper Venue

Fed. R. Civ. P. 12(b)(3) provides that a party may assert improper venue as a defense by motion. "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b).

"The requirement of venue is specific and unambiguous; it is not one of those vague principles which, in the interest of some overriding policy, is to be given a 'liberal' construction." *Schnell v. Peter Eckrich & Sons, Inc.*, 365 U.S. 260, 264 (1961). The plaintiff bears the burden of establishing proper venue. *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018). "Whether venue is proper under § 1400(b) is an issue unique to patent law and is governed by Federal Circuit law." *Id.* at 1012.

### C. Fed. R. Civ. P. 12(b)(2) – Lack of Personal Jurisdiction

Fed. R. Civ. P. 12(b)(2) governs motions to dismiss for lack of personal jurisdiction. "There are two types of personal jurisdiction: specific and general." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir. 2014). "General, all-purpose jurisdiction permits a court to hear 'any and all claims' against an entity. Specific jurisdiction, on the other hand, permits adjudicatory authority only over issues that aris[e] out of or relat[e] to the [entity's] contacts with the forum.'" *Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, 798 (S.D.N.Y. 2015) (quoting *Gucci Am., Inc. v. Bank of China*, 768 F.3d 122, 134 (2d Cir. 2014)).

Where "the complaint involves issues of patent infringement and validity," courts apply Federal Circuit law to the question of jurisdiction. *New World Int'l, Inc. v. Ford Glob. Techs., LLC*, 859 F.3d 1032, 1037 (Fed. Cir. 2017); *see also Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1352 (Fed. Cir. 2017).  For cases in New York, including in this District, the Federal Circuit analyzes personal jurisdiction based on New York's long-arm statute. *Pieczenik v. Dyax Corp.*, 265 F.3d 1329 (Fed. Cir. 2001).

"As Rule 12(b)(2) motions are 'inherently [] matter[s] requiring the resolution of factual issues outside of the pleadings,' courts may rely on additional materials outside the pleadings when ruling on such motions." *Shenzhen OKT Lighting Co. v. JLC-Tech LLC*, 2021 2021 WL 4443637, U.S. Dist.

LEXIS 185703, at *12 (S.D.N.Y. Sept. 28, 2021) (citing *John Hancock Prop. & Cas. Ins. Co. v. Universale Reinsurance Co.*, No. 91 Civ. 3644 (CES), 1992 U.S. Dist. LEXIS 1113, 1992 WL 26765, at *1 n.1 (S.D.N.Y. Feb. 5, 1992)).

### D.  Fed. R. Civ. P. 12(b)(6) – Failure to State a Claim

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Courts disregard "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. A plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," which requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556).

A complaint claiming patent infringement must contain "factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim," and must do more than "recit[e] the claim elements and merely conclud[e] that the accused product has those elements." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021).

## IV.    ARGUMENT

### A.  Plaintiff Lacks Standing to Sue

It is well established that a patent in an invention is generally issued to and is initially owned by the inventor, who may then transfer ownership through an assignment. *Bobcar Media, LLC v. Aardvark Event Logistics, Inc.*, 354 F. Supp. 3d 375, 381 (S.D.N.Y. 2018) (citing *Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 563 U.S. 776, 785, 131 S. Ct. 2188, 180 L. Ed. 2d 1 (2011); *Beech Aircraft Corp. v. Edo Corp.*, 990 F.2d 1237, 1248 (Fed. Cir. 1993)). 35 U.S.C. §

261 provides that "[a]pplications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing." However, non-executed written assignments do not meet the requirements of Section 261. *Vapor Point LLC v. Moorhead*, 832 F.3d 1343, 1353 (Fed. Cir. 2016).

Based on assignment information made publicly available by the PTO, the '272 Patent has a broken chain of title. Specifically, the first assignment document from the Inventors to the applicant, Lucid VR, Inc., is unsigned. (Choi Decl. Exh. 4). As such, the First Assignment as well as any subsequent assignment, including the latest assignment to AIIA, is invalid. Therefore, AIIA does not have rights to the '272 Patent and lacks standing to sue. As such, AIIA's Amended Complaint must be dismissed.

### B. This Court is Not the Proper Venue

The Supreme Court has held that venue in patent cases is governed solely by 28 U.S.C. § 1400(b), which establishes that "[a]ny civil action for patent infringement may be brought in the judicial district [i] where the defendant resides, or [ii] where the defendant has committed acts of [alleged] infringement and has a regular and established place of business." *TC Heartland v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 137 S. Ct. 1514 (2017).

As to the first prong, following *TC Heartland*, a defendant resides only in its state of incorporation. GSI is a Delaware company and therefore, GSI resides in Delaware, not New York. (Amended Complaint ¶ 5; Geisel Decl. ¶ 3).

As to the second prong, three conditions must be satisfied for a defendant to have a "regular and established place of business" in a judicial district: "(1) there must a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). If any of the three

---

requirements are not satisfied, a "regular and established place of business" under Section 1400(b) does not exist.

Here, the allegations in the Amended Complaint do not satisfy the second prong either. Indeed, AIIA states that "to establish a venue based on a 'regular and established place of business,' more specific factual development may be required." (Amended Complaint ¶ 13). Not only is GSI's principal place of business in Massachusetts as alleged by AIIA (*id.* ¶ 5), GSI's only office is in Massachusetts. (Geisel Decl. ¶ 3).

Simply put, GSI does not have a regular and established place of business in this District because GSI does not operate its business "in a steady, uniform, orderly, and methodical manner" here. *In re Cray*, 871 F.3d at 1362 (internal quotation marks and alterations omitted). The location must be characterized by a sufficient degree of permanence, and while a business can move locations, it must be stable for a meaningful period of time. *Id.* at 1363 (noting that the dictionary definition of "establish" is to "settle certainly, or fix permanently," and that "court decisions have stressed the importance of sufficient permanence"). A "regular and established place of business" also "requires the regular, physical presence of an employee or other agent of the defendant conducting the defendant's business[.]" *In re Google LLC*, 949 F.3d 1338, 1345 (Fed. Cir. 2020). None of this is alleged in the Amended Complaint and cannot be shown even with discovery.

Indeed, GSI: (i) maintains no offices or locations in the District; (ii) does not own, maintain, lease, or rent any property within the District; and (iii) does not have any employees in the District. (Geisel Decl. ¶¶ 3, 4). Such evidence is sufficient to show improper venue. *UI Techs., Inc. v. Ricoma*

---

*Int'l Corp.,* 2:22-cv-00220, 2022 WL 1693633, 2022 U.S. Dist. LEXIS 94849, at *8 (E.D.N.Y. May 26, 2022).  Therefore, the Amended Complaint must be dismissed for improper venue.[2]

## C.  This Court Lacks Personal Jurisdiction

Under New York law, courts exercise general jurisdiction in accordance with New York Civil Practice Law and Rules ("C.P.L.R.") § 301 and specific jurisdiction in accordance with § 302(a). *Shenzhen OKT Lighting Co.,* 2021 U.S. Dist. LEXIS 185703 at *15. Here, AIIA only alleges specific jurisdiction, not general jurisdiction. (See Amended Complaint ¶ 8, citing C.P.L.R. § 302). In any event, for at least the reasons set forth above, general jurisdiction does not exist because GSI does not engage in continuous and systematic business in New York. *Shenzhen OKT*, 2021 U.S. Dist. LEXIS 185703 at *16-17.

For specific jurisdiction, under New York's long-arm statute, a New York court has personal jurisdiction over an out-of-state defendant that: (1) "transacts any business within the state or contracts anywhere to supply goods or services in the state"; (2) "commits a tortious act within the state"; (3) "commits a tortious act [outside] the state causing injury to person or property within the state . . . if [the defendant] (i) regularly does or solicits business . . . or derives substantial revenue from goods used or consumed or services rendered[] in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce"; or (4) "owns, uses or possesses any real property situated within the state. C.P.L.R. § 302(a).

---

[2] For the reasons set forth in Section E. below, GSI believes that the Amended Complaint should be dismissed with prejudice because any further amendment would be futile.  However, in the event that the Court deems that transfer of venue is appropriate, GSI respectfully requests that the case be transferred to the District of Massachusetts.

"To determine whether there is a basis for personal jurisdiction under § 302(a)(1), courts evaluate 'the totality of the defendant's activity within the forum' and whether 'there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York.'" *Poof-Slinky, LLC v. A.S. Plastic Toys Co.*, No. 19 Civ. 9399 (ER), 2020 U.S. Dist. LEXIS 162529, 2020 WL 5350537, at *3 (S.D.N.Y. Sept. 4, 2020) (quoting *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007)). Thus, section 302(a)(1) sets forth a two-part test: "(1) [t]he defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 168 (2d Cir. 2013) (citing *Solé Resort, S.A. de C.V. v. Allure Resorts Management, LLC*, 450 F.3d 100, 103 (2d Cir. 2006)). Specifically, a plaintiff must show the cause of action is "sufficiently related to the business transacted that it would not be unfair to deem it to arise out of the transacted business, and to subject the defendants to suit in New York." *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 59 (2d Cir. 1985) (citations omitted).

Section 302(a)'s requirement that the claim "arise from" business transactions, real property ownership, or torts committed within or directed at New York does not require a direct causal link but rather "a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former[.]" *Licci,* 732 F.3d at 168 (quoting *Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 339, 984 N.E.2d 893, 960 N.Y.S.2d 695 (2012)).

AIIA's allegations regarding personal jurisdiction are that: (i) GSI "directs its sales of software services to New York residents through its commercial website and marketing activities" (Amended Complaint ¶8); (ii) that GSI "serves customers with substantial business operations in New York, such as iRobot Corporation" (*id.*); and (iii) that GSI promotes and offers infringing products

through its website, which is accessible by residents here (*id.* ¶ 11). However, none of the allegations are sufficient to overcome a Rule 12(b)(2) motion.

First, GSI's alleged activity with a single customer allegedly having substantial business operations in New York is insufficient to confer personal jurisdiction. AIIA simply alleges that GSI provided services to iRobot, who allegedly has "substantial operations in New York," and therefore, "these acts constitute purposeful availment of the New York market." (Amended Complaint ¶8). Also, it is not alleged that GSI's activities with iRobot relate in any way to AIIA's patent infringement claims.

Fact is that: (i) GSI never did business with iRobot in New York; (ii) GSI has not done business with iRobot since 2022 – well before the relevant time period; and (iii) the business GSI conducted with iRobot was not related to the technology at issue in this case.[3] (Geisel Decl. ¶6).

Second, AIIA's general allegations that GSI "serves customers with substantial operations in New York" and that GSI provides "associated technical support services to businesses with office in New York" (Amended Complaint ¶¶ 8, 9) are insufficient for personal jurisdiction. Nowhere in the Amended Complaint does AIIA identify who these customers are or whether the alleged services related in any way to the technology at issue here. Moreover, whether GSI's customers outside of New York have substantial operations in New York is completely irrelevant. "[A] plaintiff may not rely on conclusory statements without any supporting facts, as such allegations would 'lack the factual specificity necessary to confer jurisdiction.'" *Art Assure Ltd., LLC v. Artmentum GmbH*, No. 14 Civ.

---

[3] It appears that AIIA's allegations regarding iRobot is based on an case study article on GSI's website. (See Choi Decl. Exh. 7). Nowhere in the article does it state that iRobot has substantial operations in New York. Moreover, an internet search for iRobot's locations in New York yields no results. (Choi Decl. ¶ 9; Geisel Decl. ¶ 6). As such, not only is the basis for AIIA's allegation questionable, but the extent of AIIA's overall pre-suit investigation is concerning.

3756 (LGS), 2014 U.S. Dist. LEXIS 156521, 2014 WL 5757545, at *2 (S.D.N.Y. Nov. 4, 2014) (quoting *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998)).  Bottom line, GSI has no customers in the State of New York, including New York City. (Geisel Decl. ¶ 7).

Third, AIIA's general allegations that GSI promotes and offers infringing products through its website to residents in New York and that GSI's purported website is directed to and is accessible by New York residents (Amended Complaint ¶¶ 8, 11) are also insufficient for personal jurisdiction.[4] Courts are "reluctant to find personal jurisdiction unless the website 'specifically' targets residents of New York or is aimed at New York users." *Wills v. Resorts World Las Vegas, LLC*, 2025 U.S. Dist. LEXIS 115617, *4-5, 2025 WL 1696969 (E.D.N.Y. June 16, 2025) (citing *Seldon v. Direct Response Techs. Inc.*, No. 03-cv-5381, 2004 U.S. Dist. LEXIS 5344, 2004 WL 691222, at *5 (S.D.N.Y. March 31, 2004). Fact is that GSI's website is informational and is not directed to anyone in particular, and therefore, does not specifically target New York customers. (Geisel Decl. ¶ 5).

Moreover, as discussed above, GSI does not do business with anyone in New York in person or through an agent, nor does GSI own or rent any property within New York. (Geisel Decl. ¶ 4).

Therefore, the Amended Complaint must be dismissed for lack of personal jurisdiction.

### D.  The Amended Complaint Fails to State a Claim

AIIA's Amended Complaint is also deficient because AIIA's infringement allegations do nothing more than provide generic descriptions of the accused product that were obtained from marketing materials on GSI's purported website, symage.ai, and then generically concludes that the accused product meets some paraphrased claim elements. (Amended Complaint ¶¶ 17-26, 34).

---

[4] AIIA alleges that *www.symage.ai* is GSI's website.  However, that website is owned and operated by Symage, Inc., a different company.  GSI's website is *www.geisel.software*. (Geisel Decl. ¶¶ 5, 8).  AIIA also appears to refer to GSI as "Symage AI" (Amended Complaint ¶ 5), but GSI is not aware of such company nor is GSI known as "Symage AI." (Geisel Decl. ¶ 9).

These generic and conclusory allegations, which do nothing more than "parrot[] the claim language" and "conclud[e] that the accused product has those elements," cannot state a claim for infringement of a patent. *Bot M8*, 4 F.4th at 1353; *see also Golden v. Qualcomm Inc.,* 2023 WL 6561044, 2023 U.S. App. LEXIS 26806, at *4 (Fed. Cir. Oct. 10, 2023) (affirming dismissal where the "complaint did not adequately explain *how* [the accused] products infringe the asserted patent claims"). (emphasis is original).

AIIA alleges direct infringement and indirect infringement. (Amended Complaint ¶¶ 23-26). To show direct infringement, AIIA bears the burden of proving that GSI has "perform[ed] or use[d] each and every step or element of a claimed method. *Lyda v. Fremantle Media N. Am., Inc.*, 10-cv-4773-DAB, 2012 WL 957498, 2012 U.S. Dist. LEXIS 39316, at *7 (S.D.N.Y. Mar. 8, 2012) (quoting *BMC Resources, Inc. v. Paymentech, L.P*., 498 F.3d 1373, 1378 (Fed. Cir. 2007)). Indirect infringement claims likewise require "a finding that some party amongst the accused actors has committed the entire act of direct infringement." *Id*.

AIIA alleges that GSI's accused product infringes at least claim 17 of the Asserted Patent. (Amended Complaint ¶ 37).[5] Like it did in its original Complaint, AIIA merely alleges that "[GSI's] platform and services perform all major elements of at least claim 17 of the Asserted Patent." (*Id.* ¶ 17). Then, as shown below, AIIA merely paraphrases some of the claim language, and then makes conclusory allegations that GSI infringes, solely based on information from GSI's purported website. (See *Id.* ¶¶ 20-22, 34). The infringement allegations in the Amended Complaint that specifically relate to the elements of asserted claim 17 are in the following five paragraphs:

---

[5] It is also noted that AIIA's single infringement count, recited in ¶¶ 34-44 of the Amended Complaint, does not incorporate by reference any of the allegations in the paragraphs preceding the infringement count.

17. Defendant's platform and services perform all the major elements of at least claim 17 of the Asserted Patent: They generate virtual camera images from a synthetic 3D environment; Automatically annotate those images with labeled metadata; and Apply multiple processing stages to convert scene data into machine learning-ready datasets.

20. Furthermore, Defendant's synthetic image generation platform, as advertised on symage.ai, performs the steps of: Receiving databases of background images, 3D models, texture materials, and camera settings; Constructing synthetic image scenes with specific scene classes (e.g., cityscape, landscape) using a computer graphics engine; Placing virtual cameras within scenes to capture multiple views; Rendering synthetic images and additional data channels, such as depth maps, for use in training machine learning systems; and Generating additional synthetic image scenes with the same scene class and camera positions, as described in the '272 Patent.

21. According to Defendant's public statements on symage.ai, Symage is a "breakthrough synthetic image data generator" that "creates physics-based synthetic image data that's flawlessly labeled and photorealistic." Defendant claims its platform uses "physics-based rendering, not GenAI hallucinations" where "lighting, distance and object motion are physically correct, delivering labeled perfection at the pixel level." This technology generates synthetic image datasets using 3D simulation and virtual camera configurations, precisely the methodology claimed in the '272 Patent.

22. Defendant's synthetic image generation platform, including its "virtual camera" pipeline, photorealistic labeling engine, and simulation of complex 3D environments, directly infringes one or more claims of the '272 Patent.

34. Defendant directly infringes under 35 U.S.C. 271(a) by making, using, offering to sell, and selling the accused software in the U.S. Defendant performs each step of the claimed methods of the '272 Patent through its operation of the SaaS platform, including constructing synthetic image scenes, placing virtual cameras, rendering synthetic images with multiple data channels, and providing these capabilities to customers through its commercial service.

Claim 17 is for "[a] method for generating synthetic image data comprising" at least the thirteen separate steps.  As shown, even giving the claim language its broadest interpretation, nothing is alleged about at least the underlined claim elements below.

(1)    receiving, by a processor, a database of background images, an object database including 3D models, a library of texture materials, a library of scene metadata, and a library of camera setting files;

(2)    constructing, by a computer graphics engine, a first synthetic image scene having an image scene class specified in a first scene metadata file, the constructing comprising: selecting a background image from the database of background images, wherein the

---

background image is associated with the image scene class and arranged in a background portion of the first synthetic image scene according to instructions included in the first scene metadata file;

(3)     populating a foreground portion of the first synthetic image scene with 3D models associated with the image scene class and arranging the 3D models in a foreground portion of the synthetic image scene according to instructions included in the first scene metadata file;

(4)     covering the 3D model with a texture material selected from the library of texture materials, wherein the texture material is associated with the image scene class;

(5)     placing, by an image projector, a virtual camera within the synthetic image scene, the virtual camera capturing a camera view of the first synthetic image scene contained in an image plane defined by a camera settings file having camera position data, camera intrinsics, camera calibration settings, camera capture settings;

(6)     incrementally varying at least one parameter included in the camera settings file to provide a first series of camera views, wherein each camera view has a unique image plane;

(7)     for each camera view included in the first series of camera views, rendering projection coordinates included in the image plane of a camera view as a synthetic image; and

(8)     rendering additional image data for the first synthetic image scene at each unique camera view included in the first series of camera views;

(9)     constructing a second synthetic image scene having the image scene class selected for the first synthetic image scene, the second synthetic image scene constructed according to instructions included in a second scene metadata file;

(10)    placing, by the image projector, the virtual camera in the second synthetic image scene, the virtual camera capturing a second series of camera views of the second synthetic image scene, wherein the second series of camera views has the same position and direction as the first series of camera views capturing the first synthetic image scene;

(11)    for each camera view included in the second series of camera views, rendering projection coordinates included in an image plane for a camera view as a synthetic image;

(12)    rendering additional image data for the second synthetic image scene at each unique camera view included in the second series of camera views; and

(13)    assembling synthetic images and the additional image data for the first and second synthetic image scenes in a training dataset associated with the image scene class,

wherein the training dataset is used to train a machine learning system to perform a computer vision task.

As shown above, the Amended Complaint is seriously lacking because there is no mention about whether and/or how the method allegedly practiced by GSI includes at least the following:

- whether and/or how a background image is selected, what the background images are associated with, and how the background image is arranged (Step 2);

- whether and/or how a foreground portion is populated and how the 3D models are arranged (Step 3);

- whether and/or how the 3D model is covered with a textured material (Step 4);

- whether and/or how the virtual camera captures the synthetic image scene and whether the camera includes the specific claimed settings (Step 5);

- whether and/or how the camera settings are varied and the claimed characteristics of the same (Step 6);

- whether the camera views render projection coordinates for a first series of camera views (Step 7);

- whether and/or how a second synthetic image scene is constructed (Step 9); and

- whether the camera views render projection coordinates for a second series of camera views (Step 11).[6]

Indeed, AIIA cannot sufficiently allege infringement because its claim is solely based on information taken from Symage's website. The Federal Circuit has held that such allegations are not only insufficient but also sanctionable. *View Eng'g, Inc. v. Robotic Vision Sys.*, 208 F.3d 981, 985

---

[6] There are similar deficiencies for independent claims 1 and 13, which include substantially similar if not identical claim language.

(Fed. Cir. 2000). Simply put, AIIA merely alleges that GSI uses generic synthetic imaging technology, without pointing to sufficient plausible factual support relating to infringement of each and every claim element.

Therefore, the Amended Complaint must be dismissed because it lacks allegations to give sufficient notice to GSI about how it is allegedly infringing the Asserted Patent.[7]

### E. The Amended Complaint Should be Dismissed with Prejudice without Leave to Replead

When a complaint has been dismissed, permission to amend it "shall be freely given when justice so requires." *Lyda v. Fremantle Media N. Am., Inc.*, 10-cv-4773-DAB, 2012 WL 957498, 2012 U.S. Dist. LEXIS 39316, at *7 (S.D.N.Y. Mar. 8, 2012) (citing Fed. R. Civ. P. 15(a)). However, a court may dismiss without leave to amend when amendment would be "futile," or would not survive a motion to dismiss. *Id.* (citing *Oneida Indian Nation of New York v. City of Sherrill*, 337 F.3d 139, 168 (2d Cir. 2003)).

AIIA has had ample opportunity to properly plead and file its complaint. Despite having notice of specific deficiencies in its original pleading and an opportunity to resolve the issues, AIIA has not and cannot cure the deficiencies. Instead of filing the Amended Complaint:

(i)    AIIA could have and should have dismissed the original Complaint and filed in the proper venue and where personal jurisdiction exists. However, AIIA chose not to do so. Clearly,

---

[7] With respect to Count II: Temporary Injunction in the Amended Complaint, it is well-settled that injunctions are remedies, not causes of action. *Goureau v. Lemonis*, 2021 WL 4847073, 2021 U.S. Dist. LEXIS 199321, at *14-15 (S.D.N.Y. Oct. 15, 2021); *Manrique v. State Farm Mut. Auto. Ins. Co.*, 2021 WL 5745717, 2021 U.S. Dist. LEXIS 232066, at *20 (S.D.N.Y. Dec. 2, 2021) (citing *Chiste v. Hotels.com L.P.,* 756 F.Supp. 2d 382, 406-07 (S.D.N.Y. 2010) (collecting cases)). Therefore, Count II must be dismissed.

---

this Court is not the proper venue and personal jurisdiction does not exist here and therefore, any further amendment would be futile.

(ii)     With respect to the standing issue, AIIA should have dismissed the original Complaint, resolved the chain of title issue, and re-filed in the proper venue. However, AIIA chose not to do so. Without a valid First Assignment and refiling thereafter, AIIA cannot have standing to sue. Any further amendment would be futile.

(iii)     The claim language of the Asserted Patent and the purported evidence AIIA bases its infringement claim on has not changed since the filing of the original Complaint.  Yet, AIIA is still unable to properly allege its infringement claim. Any further amendment would be futile.

Therefore, GSI believes that AIIA should not be given a third bite at the apple as it would further waste the Court's and GSI's valuable resources.  As such, the Amended Complaint should be dismissed with prejudice and without leave to replead.

## V.     **CONCLUSION**

For the reasons set forth above, AIIA's Amended Complaint must be dismissed with prejudice and without leave to replead.


Dated: February 13, 2026                              Respectfully submitted,

                                                     By: */s/ John H. Choi*
                                                     John H. Choi
                                                     John H. Choi & Associates LLC
                                                     65 Challenger Road, Suite 100
                                                     Ridgefield Park, NJ 07660
                                                     Tel. (201) 580-6600
                                                     Fax. (201) 625-1108
                                                     jchoi@jchoilaw.com

                                                     *Attorneys for Defendant Geisel Software, Inc.*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of LOCAL CIVIL RULE 7.1 because, excluding the parts of the document exempted by the Rule, this document contains 6,316 words, as determined by Microsoft Word 2016.

*/s/ John H. Choi*
John H. Choi

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document and attachments thereto via the Court's CM/ECF system this February 13, 2026.

/s/ John H. Choi
John H. Choi